# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WISCONSIN

In the Matter of the Seizure of
(Address or brief description of property or premises to be seized)

| | |
|---|---|
| APPROXIMATELY $8,321.56 ON DEPOSIT IN GUARDIAN CREDIT UNION CHECKING AND SAVING ACCOUNT 1074954, HELD IN THE NAME OF GREGORY KOSMATKA | Case Number: 22 MJ 87 |

## APPLICATION FOR A WARRANT
## TO SEIZE PROPERTY SUBJECT TO FORFEITURE

I, Kostandean Kazamias, being duly sworn depose and say:

I am a Special Agent with the Drug Enforcement Administration, and have reason to believe that in the Eastern District of Wisconsin there is now certain property, namely, approximately $8,321.56 on deposit in Guardian Credit Union checking and saving account 1074954, held in the name of Gregory Kosmatka, that is civilly forfeitable under 21 U.S.C. § 881(a)(6) and 18 U.S.C. §§ 981 (a)(1)(A) and 984, and criminally forfeitable under 21 U.S.C. § 853 and 18 U.S.C. § 982(a)(1), as (1) funds that constitute proceeds of trafficking in controlled substances or were used or intended to be used to facilitate the commission of a controlled substances offense, in violation of 21 U.S.C. § 841(a)(1); and (2) funds involved in, or traceable to funds involved in, money laundering transactions in violation of 18 U.S.C. § 1956(a)(1), and which property is therefore also subject to seizure for purposes of civil forfeiture under 18 U.S.C. § 981(b) and 21 U.S.C. § 881(b), and for purposes of criminal forfeiture under 18 U.S.C. § 982(b)(1) and 21 U.S.C. § 853(f).

The application is based on these facts:

✓ Continued on the attached sheet.

❏ Delayed notice of ____ days (give exact ending date if more than 30 days:_____ is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone and email.

_Signature of Affiant_
Kostandean Kazamias, DEA

6/6/2022 at 2:14 PM
Date and time issued

at Milwaukee, Wisconsin
City and State

William E. Duffin, U.S. Magistrate Judge
Name & Title of Judicial Officer

Signature of Judicial Officer

# AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR SEIZURE WARRANTS

I, Kostandean Kazamias, being first duly sworn, hereby depose and state as follows:

## FUNDS TO BE SEIZED

1. I submit this affidavit in support of an application for warrants to seize the following:

    a. Approximately $25,440.56 U.S. Dollar from two different bank accounts **Guardian Credit Union** Checking and Saving account 1074954, (approximately $8,321.56) and **Chase** 923563030, (approximately $17,119.00);

    b. All fiat currency or crypto-currency on deposit in **Coinbase account #58bd42016908ae5a772f840e, held in the name of Gregory Kosmatka (DOB: XX/XX/1992) with an associated email address of greggbkos@gmail.com, including approximately .2436 LTC, 1.0057 BTC, 10 ETC, 27.6446 BAT, .0059 DAI, 128.9072 LINK, .4969 XTZ, 3.9246 USDC, .075 OMG, .1379 COMP, .0101 MKR, 2.7581 CGLD, .000006, ALGO, .4481 BAND, 9010 ANKR, .08114 FORTH, 7.5962 NU, 3.6387 ETH2, 1009.47 SKL, 5000 DODG, 10043.3654 AMP, .0960 BOND, 2.7108 CLV, .1487 BAL, 6.0739 FET, 4.9030 RLY, 10 SNX, 1010 COTI, .0901 AUCTION, 4.9999 SOL, .8810 RNDR,** (value 40,000-50,000 varying continuously); and

    c. **One 2017 Gray Acura TLX bearing VIN 19UUB1F51HA007017** currently owned by Gregory Kosmatka (value approximately $27,000).

2. Based on the facts and circumstances set forth below, I submit that there exists probable cause to believe that:

    a. the above properties constitute proceeds of trafficking in controlled substances, were purchased with proceeds traceable to an exchange of money for controlled substances, or were used or intended to be used to facilitate the commission of a controlled substances offense, in violation of 21 U.S.C. § 841(a)(1), and therefore are subject to civil forfeiture under 21 U.S.C. §§ 881(a)(6) and 881(a)(7), and subject to criminal forfeiture under 21 U.S.C. § 853(a);

    b. the above fiat currency and cryptocurrency properties are funds involved in, or traceable to funds involved in, money laundering offenses, committed in violation of 18 U.S.C.

§ 1956(a)(1), and therefore are subject to civil forfeiture under 18 U.S.C. §§ 981 (a)(1)(A) and 984, and subject to criminal forfeiture under 18 U.S.C. § 982(a)(1); and

c. the above properties are subject to seizure for purposes of civil forfeiture under 18 U.S.C. § 981(b) and 21 U.S.C. § 881(b) and for purposes of criminal forfeiture under 18 U.S.C. § 982(b)(1) and 21 U.S.C. § 853(f).

## BACKGROUND AND EXPERIENCE

3. I am a Special Agent with the Drug Enforcement Administration (DEA), and have been so employed since March 2020. My duties include the investigation of drug trafficking organizations and violations of federal narcotics and money laundering laws, including, but not limited to offenses defined by 21 U.S.C. § 841, 843, and 846, and 18 U.S.C. § 1956. Prior to my current assignment, I was enlisted in the Air National Guard for approximately six years, worked for the DEA as a Program Analyst for approximately two years, and worked for a private insurance company as a Financial Analyst for approximately one year. I am an investigative or law enforcement officer within the meaning of Section 2510(7) of Title 18, United States Code; that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

4. During my time as a law enforcement agent, I have been involved in the investigation of drug traffickers in Milwaukee County, in the State of Wisconsin, across the United States, and internationally. I have received training in the investigation of drug trafficking, and money laundering. My training and experience includes the following:

   a. Through informant interviews and extensive debriefings of individuals involved in drug trafficking, I have learned about the manner in which individuals and organizations finance, source, purchase, transport, and distribute controlled substances in Wisconsin, throughout the United States, and internationally.

   b. I have used my training and experience to locate, identify, and seize multiple types of drugs, drug proceeds, and drug contraband.

2

c. I have assisted in several investigations that have resulted in seizures of criminally derived property, including monetary instruments.

d. I know that controlled substances, drug paraphernalia, and drug proceeds are sent through the U.S. Postal Service system and other parcel services, such as FedEx and UPS, and I am familiar with many of the methods used by individuals who attempt to use mail services to illegally distribute controlled substances.

e. I have also relied upon informants to obtain controlled substances from drug traffickers and have assisted in undercover purchases of controlled substances.

f. I am familiar with the language used over the telephone and other electronic communications to discuss drug trafficking and know that the language is often limited, guarded, and coded. I know the various code names used to describe controlled substances. I also know that drug traffickers often use electronic devices (such as computers and cellular phones), electronic communication services (such as email and messaging applications), and social media to facilitate these crimes.

g. I know that drug traffickers often register phones, mailboxes, bank accounts, electronic communication services, and other instrumentalities of drug trafficking in the names of others, also known as nominees, to evade law enforcement.

h. I know that drug traffickers often keep documents and records about the sourcing, ordering, sale, transportation, and distribution of controlled substances.

i. I know that drug traffickers often use drug proceeds to purchase assets such as vehicles, property, and jewelry. I also know that drug traffickers often use nominees to purchase or title these assets to avoid scrutiny from law enforcement officials. I know that drug traffickers often secure drug proceeds at locations within their dominion and control, such as their residences, businesses, and storage facilities, and in safes or other secure containers.

j. I know that drug traffickers often attempt to protect and conceal drug proceeds through money laundering, including but not limited to domestic and international banks, securities brokers, service professionals, such as attorneys and accountants, casinos, real estate, shell corporations, business fronts, and otherwise legitimate businesses which generate large quantities of currency. I know that it is common for drug traffickers to obtain, secrete, transfer, conceal, or spend drug proceeds, such as currency, financial instruments, precious metals, gemstones, jewelry, books, real estate, and vehicles. I know that it is also common for drug traffickers to maintain documents and records of these drug proceeds, such as bank records, passbooks, money drafts, transaction records, letters of credit, money orders, bank drafts, titles, ownership documents, cashier's checks, bank checks, safe deposit box keys, money wrappers, and other documents relating to the purchase of financial instruments or the transfer of funds. I know that drug traffickers often purchase or title assets in fictitious names, aliases, or the names of relatives, associates, or business entities to avoid detection of these assets by government agencies. I know that even though these assets are titled or purchased by nominees, the drug traffickers actually own, use, and exercise dominion and control over these assets.

3

The aforementioned books, records, receipts, notes, ledgers, and other documents are often maintained where the traffickers have ready access. These may be stored in hard copy or soft copy on paper, computers, cellular devices, and other electronic media or electronic storage devices.

k.  Digital currency, also known as crypto-currency, is generally defined as an electronic-sourced unit of value, which can substitute for fiat currency. Digital currency exists entirely on the Internet and is not stored in any physical form. Digital currency is not issued by any government, bank, or company and is instead generated and controlled through computer software operating on a decentralized peer-to-peer network.

l.  Bitcoin is one type of digital currency. Bitcoin payments are recorded in a public ledger maintained by peer-to-peer verification and is, therefore, not maintained by a single administrator or entity. Individuals can acquire bitcoins either by "mining" or by purchasing Bitcoins from other individuals. An individual can "mine" for Bitcoins by allowing his computing power to verify and record the bitcoin payments into a public ledger. Individuals are rewarded for this by receiving newly-created Bitcoins. An individual can send and receive Bitcoins through peer-to-peer digital transactions or by using a third-party broker. Such transactions can be performed on any type of computer.

m.  Bitcoins are stored on digital "wallets." A digital wallet essentially stores the access code that allows an individual to conduct bitcoin transactions on the public ledger. To access bitcoins on the public ledger, an individual must use a public address (or "public key") and a private address (or "private key"). The public address is similar to an account number while the private key is similar to an account password. Even though the public addresses of transactors are recorded on the public ledger, the true identities of the individuals or entities behind the public addresses are not recorded. If, however, a real individual or entity is linked to a public address, an investigator could determine what transactions were conducted by that individual or entity. Bitcoin transactions are, therefore, described as "pseudonymous," or partially anonymous.

n.  A Binance account has multiple "wallets," sub-accounts, or sub-wallets for holding different currency (e.g., U.S. dollars, Bitcoin, Dogecoin, TetherUS, Bitcoin Cash, Bitcoin Gold), but all of the sub-wallets are within one account. The funds can be readily moved from one currency to another currency within the same account. The value of the cryptocurrency relative to the U.S. dollar is constantly changing so the exact value is unknown until the funds are transferred out. Many Bitcoin companies allow the account holder to control the "key" for each wallet and that "key" is needed to transfer or remove funds. However, Binance and or Coinbase controls the "key" to each of the wallets on its platform.

o.  Drug traffickers often use enhanced cryptocurrency, such as Bitcoin, to protect their identities, launder money, and conceal drug proceeds, because of the anonymity provided by cryptocurrency. Bitcoin is a decentralized digital currency without a central bank or single administrator. Payments are sent from user-to-user on the

4

peer-to-peer bitcoin network without the need for intermediaries. These services add layers of anonymity to financial transactions to evade law enforcement.

p. I know that drug traffickers often maintain large amounts of currency, including funds in readily accessible financial accounts, to finance their ongoing drug business. I know that those involved in drug trafficking or money laundering often keep records of their transactions. Because drug trafficking generates large sums of cash, drug traffickers often keep detailed records about the distribution of narcotics and the laundering of proceeds. I also know that drug trafficking and money laundering activities require the cooperation, association, and communication between and among a number of people. As a result, people who traffic in narcotics or launder money for such organizations possess documents that identify other members of their organization, such as telephone books, address books, handwritten notations, telephone bills, and documents containing lists of names and addresses of criminal associates. Such records also provide information about the identities of co-conspirators who launder money and traffick drugs. I also know that drug traffickers commonly maintain addresses or telephone numbers which reflect names, addresses, or telephone numbers of their drug trafficking and money laundering associates in hard copy and soft copy on papers, books, computers, cellular devices, and other electronic media or electronic storage devices.

q. I know that drug traffickers often use electronic devices, such as telephones, cellular devices, computers, and currency counting machines to generate, transfer, count, record, or store the information described above and conduct drug trafficking and money laundering. I am familiar with computers, cellular devices, pagers, and other electronic media or electronic storage devices and their uses by drug traffickers to communicate with suppliers, customers, co-conspirators, and fellow traffickers. These devices often contain evidence of illegal activities in the form of communication records, voicemail, email, text messages, video and audio clips, location information, business records, and transaction records. I know drug traffickers take, store, preserve, or maintain photographs or videos of themselves, their associates, their property, their drugs, and their drug proceeds. These traffickers usually maintain these photographs or videos on computers, cellular devices, and other electronic media or electronic storage devices. Based upon my training and experience, I know that computer hardware and software can be important to a criminal investigation in two distinct and important respects: (1) the objects themselves may be instrumentalities, fruits, or evidence of crime; and (2) the objects may have been used to collect and store information about crimes. I know the following information can be retrieved to show evidence of use of a computer or smartphone to further the drug trade: system components, input devices, output devices, data storage devices, data transmission devices, and network devices and any data contained within such systems; computer media and any data contained within such media; operating system software, application or access program disks, manuals, books, brochures, or notes, computer access codes, user names, log files, configuration files, passwords, screen names, email addresses, IP addresses, and SIM cards.

r. I have participated in numerous drug trafficking investigations involving the seizure of computers, cellular phones, cameras, and other digital storage devices,

5

and the subsequent analysis of electronic data stored within these devices. This has led to evidence of the crimes under investigation and corroborated information already known or suspected by law enforcement. I have regularly used electronic evidence to find proof relating to the commission of criminal offenses, including intent, motive, manner, means, and the identity of suspects and conspirators;

    s.    I have also participated in the execution of numerous premises search warrants and arrests, where controlled substances, firearms, drug paraphernalia, drug proceeds, electronic devices, and records relating drug trafficking and drug proceeds were seized.

5. This affidavit is based upon my personal knowledge and upon information reported to me by other federal, state, and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable. Throughout this affidavit, I refer to case agents. Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom I have had regular contact regarding this investigation.

6. This affidavit is intended to show simply that there is sufficient probable cause for the requested warrants and does not set forth all of my knowledge about this matter.

## **PROBABLE CAUSE**

7. This affiant knows that on May 6th 2022, multiple state search warrants were executed on 1022A E Potter Ave and 9075 W Sura Ln, regarding Gregory Kosmatka (X-XX-1992). The search warrants were signed by Honorable Barry Phillips. During the search warrants Case Agents did arrest Kosamtka at 9075 W Sura Ln. Kosmatka did provide officers with a key to enter 1022A E Potter Ave, Kosmatka also provided consent for officers to enter a storage locker located at 1500 South 1st street. Officer located approximately 75,000 in US Currency, a computer, cell phones and identifiers at 9075 West Sura Lane. Officers located approximately 51 pounds of THC products to include but not limited plant, wax, vape cartridges and edibles along with tax documents Crypto logs and identifiers at 1022A E Potter Ave. At the storage locker officers located approximately 30,000 in US Currency and vape parts.

8. This affiant knows that a Mirandized statement was conducted with Kosmatka. This interview took place at West Allis police station. During this interview Kosmatka stated the following that

he lives at 9075 West Sura Lane Apt 319. He lives there by himself. He has another residence at 1022A East Potter Avenue, which he used as an office. He currently owns a **2017 Gray Acura TLX VIN 19UUB1F51HA007017** which he paid off last year. He stated that he recently resupplied on product and purchased more then what he would normally have because the the price was good. He stated he currently had edibles, wax, plant, and cartridges (all THC products). When asked how much, he indicated that he just picked up $10,000 worth of vape cartridges $10,000 worth of plant and a couple thousand worth of edibles. He stated that when he is selling the products that he mostly drives the product in his **2017 Gray Acura TLX VIN 19UUB1F51HA007017** to the different locations. He described himself as a delivery serve for THC products.

9. Affiant knows that Kosmatka further stated he has been selling since around 2018 and did smaller sales before 2018 while in college. He stated he makes good money selling and that he estimated clearing $5,000 to $10,000 a month from selling. He stated that he also buys and trades a lot of Cryptocurrency. Kosmatka stated that he does have a job with his father's Health insurance (Platinum One Health) company which his father pays him $600.00 a week for in cashiers checks. When asked about his last employment history where he would have a Paycheck or file a W2 tax form; He stated the last real job he had was probably in 2014 or 2015 at a restaurant. He then stated that he gets about $30,000.00 a year from his father who owns a health care and life insurance company. He then stated that he does not currently have a health care license like his father so he helps out and works from home and or in the office.

10. Affiant knows that there was a paper with monthly bills located in the Potter residence. This paper itemized rent and bills for both addresses' Potter rent 1002.00 Sura rent 1300.27. The total bill for the two places with his other itemized bills such as storage, utilities, and cellphone came out to be approximately $2842.00 a month.

11. Case agents believe the funds in the accounts from **Guardian Credit Union, Chase and**

7

**in the cryptocurrency** are drug proceeds and are being used to launder funds. Case agents further believe the funds used to pay for the **2017 Gray Acura TLX VIN 19UUB1F51HA007017** were drug proceeds and that the **2017 Gray Acura TLX VIN 19UUB1F51HA007017** was used to transport controlled substances for distribution. Case agents know that the amounts of cryptocurrency, the quantity of transactions, and the attempted concealing of source of funds are all consistent with drug proceeds and money laundering. Furthermore, affiant know the $600 per week from Komastka will average out to $2,400.00 a month and that the month bills labeled on the sheet in the Potter residence revealed $2,842.00, this does not include any type of vehicle payment. This shows the funding for the rest of the bills would have to come from other sources.

12. Affiant knows that a subpoena and request to freeze was served to **Chase, Guardian and Coinbase** for all accounts regarding Gregory Kosmatka. As these accounts were identified suspected drug proceeds which transferred multiple times to the **cryptocurrency**. The Financial institutions which were listed on the Coinbase account are the same **Chase** and **Guardian** account number listed above.

13. Sophisticated drug traffickers and money launderers prefer to use private crypto-currency wallets, which are controlled and stored on personal devices such as a laptop computer, cellular telephone, or thumb drive. This is preferred for the security of these funds since the funds are physically stored in the device (private wallet). Eventually, the funds need to reach a crypto-currency exchange which is similar to a "bank for crypto-currency." This is required by the drug trafficker/money launderer because the crypto-currency exchange is linked to a bank account, and this is how the funds are commonly exchanged from crypto-currency to fiat currency. Although crypto-currency can often be traced by law enforcement through private wallets and crypto-currency exchanges, law enforcement cannot locate or seize a private wallet stored on a personal device, unless that personal device is in the physical possession of law enforcement. As a result, criminal proceeds in the form of crypto-currency are regularly transferred between private wallets and crypto-currency exchanges to disguise the funds, and it is often times as the

funds funnel through the crypto-currency exchange that law enforcement can seize the funds with the cooperation of the crypto-currency exchange "bank for cryptocurrency."

14. Case agents believe that the **2017 Gray Acura TLX VIN 19UUB1F51HA007017** is worth $27,000.00. The estimated value of the, **Coinbase account believed to be approximately $40,000 to $50,000, Chase account $17,119.00 and Guardian $8,321.56.** All values are estimated and are currently waiting on subpoena returns. For these reasons, and for the fact that drug proceeds are co-mingled, being exchanged with other crypto-currency, and this account is being used to further the drug trafficking, case agents request warrants to seize the following:

    a. Approximately $25,440.56 U.S. Dollar from two different bank accounts **Guardian Credit Union** Checking and Saving account 1074954, (approximately $8,321.56) and **Chase** 923563030, (approximately $17,119.00);

    b. All fiat currency or crypto-currency on deposit in **Coinbase account #58bd42016908ae5a772f840e, held in the name of Gregory Kosmatka (DOB: XX/XX/1992) with an associated email address of greggbkos@gmail.com, including approximately .2436 LTC, 1.0057 BTC, 10 ETC, 27.6446 BAT, .0059 DAI, 128.9072 LINK, .4969 XTZ, 3.9246 USDC, .075 OMG, .1379 COMP, .0101 MKR, 2.7581 CGLD, .000006, ALGO, .4481 BAND, 9010 ANKR, .08114 FORTH, 7.5962 NU, 3.6387 ETH2, 1009.47 SKL, 5000 DODG, 10043.3654 AMP, .0960 BOND, 2.7108 CLV, .1487 BAL, 6.0739 FET, 4.9030 RLY, 10 SNX, 1010 COTI, .0901 AUCTION, 4.9999 SOL, .8810 RNDR,** (value 40,000-50,000 varying continuously); and

    c. **One 2017 Gray Acura TLX bearing VIN 19UUB1F51HA007017** currently owned by Gregory Kosmatka (value approximately $27,000).

## CONCLUSION

15. Based on the facts and circumstances set forth in this affidavit, I submit that there exists probable cause to believe that:

a. the below properties constitute proceeds of trafficking in controlled substances, were purchased with proceeds traceable to an exchange of money for controlled substances, or were used or intended to be used to facilitate the commission of a controlled substances offense, in violation of 21 U.S.C. § 841(a)(1), and therefore are subject to civil forfeiture under 21 U.S.C. §§ 881(a)(6) and 881(a)(7), and subject to criminal forfeiture under 21 U.S.C. § 853(a);

b. the below fiat currency and cryptocurrency properties are funds involved in, or traceable to funds involved in, money laundering offenses, committed in violation of 18 U.S.C. § 1956(a)(1), and therefore are subject to civil forfeiture under 18 U.S.C. §§ 981 (a)(1)(A) and 984, and subject to criminal forfeiture under 18 U.S.C. § 982(a)(1); and

c. the below properties are subject to seizure for purposes of civil forfeiture under 18 U.S.C. § 981(b) and 21 U.S.C. § 881(b) and for purposes of criminal forfeiture under 18 U.S.C. § 982(b)(1) and 21 U.S.C. § 853(f).

- Approximately $25,440.56 U.S. Dollar from two different bank accounts **Guardian Credit Union** Checking and Saving account 1074954, (approximately $8,321.56) and **Chase** 923563030, (approximately $17,119.00);

- All fiat currency or crypto-currency on deposit in **Coinbase account #58bd42016908ae5a772f840e, held in the name of Gregory Kosmatka (DOB: XX/XX/1992) with an associated email address of greggbkos@gmail.com, including approximately .2436 LTC, 1.0057 BTC, 10 ETC, 27.6446 BAT, .0059 DAI, 128.9072 LINK, .4969 XTZ, 3.9246 USDC, .075 OMG, .1379 COMP, .0101 MKR, 2.7581 CGLD, .000006, ALGO, .4481 BAND, 9010 ANKR, .08114 FORTH, 7.5962 NU, 3.6387 ETH2, 1009.47 SKL, 5000 DODG, 10043.3654 AMP, .0960 BOND, 2.7108 CLV, .1487 BAL, 6.0739 FET, 4.9030 RLY, 10 SNX, 1010 COTI, .0901 AUCTION, 4.9999 SOL, .8810 RNDR,** (value 40,000-50,000 varying continuously); and

- **One 2017 Gray Acura TLX bearing VIN 19UUB1F51HA007017** currently owned by Gregory Kosmatka (value approximately $27,000).